667 F.2d 1151
 Frederick HOUSTON and Frederick Houston and Willie Mae
Houston, as Husband and Wife, Appellants,
and
Liberty Mutual Insurance Company, Use-Plaintiff,
v.
MURMANSK SHIPPING COMPANY, Appellee.
 No. 80-1543.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 1, 1981.
Decided Jan. 4, 1982.
 
 Bernard M. Goldstein, Baltimore, Md. (Howard E. Horowitz, Baltimore, Md., on brief), for appellants.
 Randall C. Coleman, Baltimore, Md. (Geoffrey S. Tobias, Warren B. Daly, Jr., Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellee.
 Before WINTER, Chief Judge, and BUTZNER and SPROUSE, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 Frederick Houston, a Baltimore longshoreman, was injured by a falling roll of newsprint while he worked in the hold of a Murmansk Shipping Company vessel. In the district court, Houston moved for a jury trial, which Murmansk, an arm of the Soviet Union, opposed. Although Murmansk is a "foreign state" as defined by the Foreign Sovereign Immunities Act of 1976* (FSIA), the district court was uncertain whether the Act compelled a nonjury trial. Aware that this court had docketed an appeal on that very issue, the district judge settled on a novel procedure. He would let a jury try the case and enter a judgment on its verdict, but he would also record his own nonjury findings, to be substituted for the jury's should it be decided on appeal that the FSIA compels a nonjury trial. The parties assented to this procedure.
 
 
 2
 The jury found that Murmansk was not negligent, and the court entered judgment on this verdict for Murmansk. In accordance with the procedure he had devised, the district judge filed his own findings and conclusions. He found that Murmansk was negligent and that Houston and his wife were entitled to damages in the amount of $443,000. Of course, judgment was not entered on the judge's view of the case.
 
 
 3
 Houston appeals on several grounds, but the dispositive issue is what to do with this collection of contradictory jury and nonjury findings, now that Williams v. Shipping Corp. of India, 653 F.2d 875 (4th Cir. 1981), has shown that the FSIA does indeed compel a nonjury trial. We conclude that the judgment below must be vacated, that judgment cannot be entered on the district judge's nonjury findings, and that the case must be remanded for a new nonjury trial.
 
 
 4
 * Despite his successful motion for a jury trial below, Houston now argues that the FSIA required a nonjury trial as an essential element of the district court's subject matter jurisdiction. The FSIA added § 1330(a) to title 28 of the United States Code, giving district courts "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state...." Jurisdiction is so fundamental a matter, Houston asserts, that no party is precluded from asserting a lack of jurisdiction, regardless of that party's earlier arguments to the contrary. Houston contends that the district court had no jurisdiction to enter a judgment on the jury's verdict but that it does have jurisdiction to enter a judgment on the court's own, nonjury findings. We should, by Houston's reasoning, vacate the judgment entered on the verdict and remand the case for entry of judgment on the court's nonjury findings.
 
 
 5
 In the course of the pre-trial proceedings dealing with Houston's jury demand, Murmansk took the position with respect to jurisdiction that Houston now urges. Murmansk at that time asserted that the requirement for a nonjury trial found in § 1330(a) was an element of subject matter jurisdiction. Murmansk now contends the contrary: whether a case is tried jury or nonjury is a procedural question, not a question of subject matter jurisdiction. Murmansk argues that Houston is bound by the jury's verdict and that we should affirm the judgment. Alternatively, it contends that a remand for entry of judgment on the district court's nonjury findings would be inappropriate because no actual nonjury trial was conducted.
 
 II
 
 6
 At the outset, it is important to recognize the limited nature of the jurisdictional question presented by this appeal. There is no doubt that 28 U.S.C. § 1330(a) and its counterpart dealing with removal, § 1441(d), are the sole source of a district court's jurisdiction over a civil action against a foreign state as defined by the FSIA. Williams v. Shipping Corp. of India, 653 F.2d 875 (4th Cir. 1981); Ruggiero v. Compania Peruana de Vapores, 639 F.2d 872 (2d Cir. 1981); see Note, Ruggiero, etc.: Jury Preclusion in Actions Against Foreign Sovereign-Owned Instrumentalities, 20 Colum.J. Transnat'l L. 199 (1981). The issue presented by this appeal is whether the term "nonjury civil action" found in § 1330(a), but omitted in § 1441(d), is an essential element defining the court's jurisdiction.
 
 
 7
 Houston's view that the district court had jurisdiction to enter nonjury findings but lacked jurisdiction to enter judgment on the jury's verdict impresses us as novel, though not thoroughly implausible. We do not need to address the possibility that jurisdiction is a bifurcated concept, however, because we do not believe that Congress intended § 1330(a) to entwine the grant of jurisdictional authority with the presence or absence of a jury in the courtroom.
 
 
 8
 Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), dealt precisely with the converse of the issue raised in this case. A criminal prosecution, Patton had begun in district court with an impaneled jury of twelve; later, one juror became too ill to continue. Both sides agreed to proceed with eleven jurors, who then found the defendant guilty. Patton appealed, claiming that his constitutional right to a jury trial could not be waived. Although many courts had previously agreed with this argument on the basis that a jury was a jurisdictional prerequisite to a criminal tribunal, the Supreme Court held squarely to the contrary: "In the absence of a valid consent the district court cannot proceed except with a jury, not because a jury is necessary to its jurisdiction, but because the accused is entitled by the terms of the Constitution to that mode of trial." 281 U.S. at 299, 50 S.Ct. at 258. In view of this long-settled authority, Congress would have little reason now to make the presence or absence of a jury in a civil case a matter of jurisdictional concern.
 
 
 9
 Second, Congress apparently did not intend the phrase "nonjury civil action" to define the district court's jurisdiction. Rather, it appears that the phrase was intended to serve as a shorthand way of ensuring that actions against foreign states would be tried without a jury. See 1 Moore's Federal Practice P 0.66(4) (2d ed. 1981). This reading of § 1330(a) harmonizes with § 1441(d), which governs removal of actions against foreign states as defined by the FSIA. This section provides: "Upon removal the action shall be tried by the court without jury." With respect to removal, Congress did not suggest that the absence of a jury is a necessary predicate of subject matter jurisdiction. Because the jurisdiction of a district court over an action brought against a foreign state is the same whether the action is commenced in federal court or removed from a state court, we conclude that the text of § 1441(d) more clearly expresses congressional intent than § 1330(a).
 
 
 10
 Moreover, the House Report expressly compares the exclusion of jury trials in FSIA cases with the provisions for suits against the United States, for which juries are excluded not in the jurisdictional clause of 28 U.S.C. § 1346, but in a separate provision, 28 U.S.C. § 2402. See H.R.Rep.No.94-1487, 94th Cong., 2d Sess. 13, reprinted in (1976) U.S.Code Cong. & Ad.News 6604, 6611.
 
 
 11
 Third, if a "nonjury civil action" were construed as a new type of civil action, Congress would have pointlessly established a conflict with the requirement of rule 2 of the Federal Rules of Civil Procedure that "(t)here shall be one form of action ...." No previous congressional enactment could serve as a precedent for such a conflict. The term "nonjury civil action" occurs nowhere else in the Code but in § 1330(a). The term "jury civil action" does not occur in the Code at all.
 
 
 12
 Finally, jurisdiction is typically determined at the outset of litigation from the plaintiff's complaint. See Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); Bell v. Hood, 327 U.S. 678, 681-82, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Smithers v. Smith, 204 U.S. 632, 642-43, 27 S.Ct. 297, 299-300, 51 L.Ed. 656 (1907); M. Redish, Federal Jurisdiction: Tensions in the Allocation of Judicial Power 72 (1980). Sometimes, however, a court must first investigate the merits of an action to determine jurisdiction. See Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 139, 67 S.Ct. 231, 235, 91 L.Ed. 128 (1946). If a complaint contains a request for a jury trial and the court determines, either from the complaint or after investigation, that the defendant is a "foreign state" as defined in § 1603, the complaint should not be dismissed for lack of jurisdiction. See Sugarman v. Aeromexico, Inc., 626 F.2d 270, 275 n.9 (3d Cir. 1980). The sensible practice is simply to strike the jury demand. This was the course sanctioned in Williams v. Shipping Corp. of India, 653 F.2d 875 (4th Cir. 1981), and Ruggiero v. Compania Peruana de Vapores, 639 F.2d 872 (2d Cir. 1981).
 
 
 13
 Plainly Congress intended to foster a uniformity of decisions in cases under the FSIA by having them tried to the court without a jury, H.R.Rep.No.94-1487, supra, but we need not construe this compelling public policy as a matter of jurisdiction to give it full effect.
 
 
 14
 We conclude that the district court did not lose its jurisdiction but instead committed error by trying the instant case to a jury. Having reached this conclusion, we, nevertheless, cannot accept Murmansk's argument that Houston is bound, under the doctrine of invited error, by the jury's verdict. As we understand the unique procedure devised by the district court, to which the parties agreed, the effect to be given to either the jury's verdict or the judge's findings was to be governed by the outcome of the Williams litigation and not by the positions the parties espoused with respect to the jury demand. The question remains whether the district judge's nonjury findings can be entered on remand or whether a new trial is necessary.
 
 III
 
 15
 Despite the district judge's announced intention to adhere to his jury-and-nonjury procedure, the record shows that a true nonjury trial was not held. The court expressed to counsel more than once its view of what the court would have done-but did not do-had the case been tried without a jury. A critical issue was whether the rolls of newsprint were negligently loaded on the ship. At one point after the close of all the evidence, while the jury was deliberating, the court observed with reference to this issue: "I listened to all the experts in this case, and in my own mind, I must tell you that if I were the sole fact finder and I was sitting up here without a jury, I would have asked (a question about the loading of the rolls of newsprint) over and over again of every expert." Again, during the same colloquy:
 
 
 16
 I did not do this earlier because you have got in this case extremely capable counsel ... and I did not think I ought to try this case before the jury, but I ask the question now (of counsel) as if I were a nonjury fact finder, ... if this had been a nonjury trial, I would have asked the question of each expert: Why wasn't it negligent to put these newsprint rolls, weighing as much as they did and having the diameter they did, on a platform that narrow?
 
 
 17
 And again, only moments later: "(I)f I had tried the case nonjury, I would have gone into those questions more with the experts. I did not do it in a jury trial with counsel who are as able as counsel in this case are." In view of these remarks, the judge's "nonjury findings" cannot be accepted as what he might have found had there been an actual nonjury trial as contemplated by the Act.
 
 
 18
 A new trial is therefore necessary. Because both parties deserve to be satisfied that the new trial not only is, but also appears to be, de novo, we think a trial before another judge is appropriate.
 
 
 19
 VACATED AND REMANDED.
 
 WINTER, Chief Judge, concurring:
 
 20
 I agree that the judgment of the district court must be vacated and the case remanded for a new nonjury trial. My reasons, however, differ in part from those expressed by the majority and so I write separately.
 
 
 21
 I would not find it necessary to decide whether the requirement of the Foreign Sovereign Immunities Act of 1976 that the trial be nonjury is jurisdictional or not, although I incline to the view that adherence to Williams v. Shipping Corp. of India, 653 F.2d 875 (4 Cir. 1981), compels us to the conclusion that it is jurisdictional. Whether or not the district court acted in excess of its jurisdiction in conducting a jury trial, we must reverse the judgment entered below because the parties agreed that the district court's decision, rather than the jury's decision, would be determinative if the Williams court held that the Act required a nonjury trial. The parties cannot be said to have waived any legal error in trying the case to the jury. We are thus brought to the adequacy of the nonjury proceedings before the district court. Although the district court undertook to decide the case nonjury, the district judge repeatedly articulated his view that there was not a full record before him, largely as a result of the constraint placed on him by the presence of a jury. Thus there should be a new trial and I agree that, to preserve the appearance of justice, it is better that there be another district judge presiding.
 
 
 
 *
 Pub.L. No. 94-583, 90 Stat. 2891 (1976); codified at 28 U.S.C. §§ 1330, 1332, 1391, 1441, 1602-1611. A "foreign state" is defined in § 1603