In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 07-1708, 07-1821

OLYMPIA EXPRESS, INC. and NEOTOURS, LTD.,

*Plaintiffs-Appellees,*
*Cross-Appellants,*

*v.*

LINEE AEREE ITALIANE, S.P.A., doing business as
ALITALIA AIRLINES,

*Defendant-Appellant,*
*Cross-Appellee.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 2858—**Sidney I. Schenkier**, *Magistrate Judge.*

_____

ARGUED NOVEMBER 5, 2007—DECIDED NOVEMBER 30, 2007

_____

Before POSNER, EVANS, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* Alitalia appeals from an $8.5 million judgment in a suit for breach of contract under Illinois law. The suit, brought by two firms that sell tickets for seats on Alitalia flights, had been filed in an Illinois state court. But Alitalia removed it to the federal district court in Chicago under the Foreign Sovereign Immunities

Act (codified in 28 U.S.C. §§ 1330(a), 1441(d), 1602-1611), at a time when the Italian government was Alitalia's majority shareholder. That made Alitalia a foreign-government instrumentality (a "foreign state," in the language of the Act) fully subject to the Act, 28 U.S.C. §§ 1603(a), (b)(2), and therefore entitled to remove the case to federal district court. The removal provision, 28 U.S.C. § 1441(d); see *In re Air Crash Disaster Near Roselawn, Indiana*, 96 F.3d 932, 936 (7th Cir. 1996); *Rex v. Compania Pervana de Vapores, S.A.*, 660 F.2d 61, 63-64 (3d Cir. 1981), states that "upon removal the action shall be tried by the court without jury." But after the case was removed, the Italian government sold its majority shareholding in Alitalia, and the plaintiffs—four years into the case—demanded a jury. The district court agreed to the demand. Alitalia sought mandamus to prevent the jury trial, but while its petition for mandamus was pending, the jury trial (which had not been stayed) was held, resulting in the judgment from which Alitalia now appeals. We denied the petition without considering the merits of Alitalia's claim to be entitled to a nonjury trial. *In re Linee Aeree Italiane (Alitalia)*, 469 F.3d 638 (7th Cir. 2006). So if the Foreign Sovereign Immunities Act entitled it to a nonjury trial, we must vacate the judgment. *Matthews v. CTI Container Transport Int'l, Inc.*, 871 F.2d 270, 282 (2d Cir. 1989); *Houston v. Murmansk Shipping Co.*, 667 F.2d 1151, 1154-55 (4th Cir. 1982); cf. *Fisher v. Danos*, 671 F.2d 904, 906 (5th Cir. 1982).

The only basis of federal jurisdiction in this case, at least when it was filed and thus before Alitalia's conversion to a private firm, was the removal provision that we cited. Because the suit arose under state rather than federal law, it could not have been brought in or removed to a federal district court under the federal-

question jurisdiction. Nor under the diversity jurisdiction; a suit against a foreign state is not within that jurisdiction. 28 U.S.C. § 1332(a)(4); *Ruggiero v. Compania Peruana de Vapores Inca Capac Yupanqui*, 639 F.2d 872, 875-76 (2d Cir. 1981) (Friendly, J.). (A suit *by* a foreign state against citizens of one or more U.S. states is. 28 U.S.C. § 1332(a)(4).) The district court thought that Alitalia's conversion changed the jurisdictional basis of the suit from foreign sovereign immunity to diversity of citizenship. But in *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478-80 (2003), the Supreme Court had held that whether the defendant is a foreign state within the meaning of the Foreign Sovereign Immunities Act is to be determined on the basis of the facts in existence when the suit was filed, and if this principle governs our case the jurisdictional basis has not changed.

The specific question in *Dole* was whether the Act applied to a company that had ceased to be a "foreign state" before it was sued rather than, as in our case, after. But the Court based its decision on the familiar rule—emphatically reaffirmed after *Dole*, in *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004)—that jurisdiction is determined by the facts that exist when the suit is filed. 538 U.S. at 478. It would be a big surprise to discover that the Court has changed its mind and now thinks that jurisdiction under the Foreign Sovereign Immunities Act is determined when a party demands a jury trial—in this case, demands it years after the suit was first removed to federal district court under section 1441(d).

So the district court was wrong to think that when Alitalia was privatized the jurisdictional basis of this suit switched to diversity, which allows a suit by a U.S.

citizen against a foreign citizen, 28 U.S.C. § 1332(a)(2), as distinct from a foreign state instrumentality. "There is no doubt that 28 U.S.C. § 1330(a) and its counterpart dealing with removal, § 1441(d), are the sole source of a district court's jurisdiction over a civil action against a foreign state as defined by the FSIA." *Houston v. Murmansk Shipping Co.*, *supra*, 667 F.2d at 1153.

We have found only two previous cases in which the defendant ceased to be a "foreign state" after the suit was filed. *Leith v. Lufthansa German Airlines*, 897 F. Supp. 1115 (N.D. Ill. 1995), held that the change of status did not take the case outside the Foreign Sovereign Immunities Act. *Matton v. British Airways Board, Inc.,* No. 85 CIV. 1268, 1988 WL 117456, at *3 (S.D.N.Y., Oct. 27, 1988), held that it did. We agree with *Leith*; the jurisdictional basis of the suit continued to be, and remains, that Act, and nothing else. But this does not mean that a change in the defendant's status that occurs after a suit is filed cannot alter the plaintiffs' right to a jury trial. A demand for a jury trial is made "after [rather than at] the commencement of the action and not later than 10 days after the service of the last pleading directed to [an issue triable of right by a jury]." Fed. R. Civ. P. 38(b). And while in this case the demand was filed *much* later, it could be argued that the deadline should be tolled whenever an unforeseen change eliminates a bar to the demand—especially in this case, because Alitalia stipulated that it would not object to the plaintiffs' demand for a jury trial on the ground that it was untimely.

The tolling of the 10-day deadline would certainly be impermissible were the bar to a jury trial in section 1441(d) itself jurisdictional. That section is, we have just seen, the only basis upon which this case is within federal

jurisdiction. Jurisdiction is power, as Holmes famously said, *Cordova v. Grant*, 248 U.S. 413, 419 (1919); *Michigan Trust Co. v. Ferry*, 228 U.S. 346, 356 (1913); see also *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869), and the power conferred by section 1441(d) does not include the power to conduct a jury trial. The plaintiffs argue that the ban on trial by jury in section 1441(d) cannot be important enough to affect jurisdiction because the section is not even a part of the Foreign Sovereign Immunities Act. But that is incorrect. Both that section and 28 U.S.C. §§ 6202-6211 are provisions of the Act (along with 28 U.S.C. § 1330(a), of which more in a moment). See Public Law 94-583, 90 Stat. 2891 (Oct. 21, 1976). They simply were codified in different parts of Title 28. Section 1441(d) confers removal jurisdiction and was therefore grouped with other, similar provisions.

What is true is that jurisdiction usually refers to a court's authority to entertain a case, rather than to procedural incidents such as whether to convene a bench trial or a jury trial. Against this, however, can be cited the text of 28 U.S.C. § 1330(a). Although the plaintiffs filed this suit in state court, they could have filed it in federal district court under—and only under—that section, which provides that "the district courts shall have original jurisdiction without regard to amount in controversy of any *nonjury* civil action against a foreign state." (Emphasis added.) That reads like a conferral of jurisdiction only over nonjury suits, rather than the conferral of a broader jurisdiction and then, incidentally as it were, an instruction to the judge not to convene a jury. The latter is a more natural reading of section 1441(d). But it can't be right that if one brings a suit directly in federal court

against a foreign state a jury trial is absolutely barred, while if instead one brings the identical suit in state court and the foreign state removes it to the same federal district court a subsequent change in the defendant's status may enable the plaintiff to obtain a jury trial. Cf. *Ruggiero v. Compania Peruana de Vapores Inca Capac Yupanqui*, *supra*, 639 F.2d at 876 n. 7.

Yet the court in the *Houston* case, which we cited earlier, held that the bar to jury trial in sections 1330(a) and 1441(d) is *not* jurisdictional; and though decided many years ago, *Houston* remains the only decision to have addressed the question. The foreign-state defendant had prevailed with the jury and was opposing the plaintiff's argument that the case must be retried without one, though it was the plaintiff that had demanded the jury and the defendant that had opposed the demand. Since the bar in the Foreign Sovereign Immunities Act to trial by jury is intended for the benefit of the foreign-state defendant, it would have been a considerable paradox to invoke the concept of subject-matter jurisdiction to force that defendant, after it had prevailed in a jury trial, to undergo a bench trial. There was every reason to terminate the litigation on the basis of the jury verdict in favor of the foreign-state defendant even though the plaintiff's demand for a jury should have been refused.

The facts of *Houston* make us reluctant to conclude that the bar to a jury trial in a case under the Foreign Sovereign Immunities Act is jurisdictional, so that a jury trial in a case governed by the Act must be treated as a nullity even if the consequence would be to disserve the Act's purpose. We are mindful that the Supreme Court stated emphatically just last term that "a clear and explicit *withdrawal* of jurisdiction withdraws jurisdiction." *Rockwell*

*Int'l Corp. v. United States*, 127 S. Ct. 1397, 1405 (2007)
(emphasis in original). But the Court distinguished that
case from one in which a statute confers "jurisdiction" to
issue a particular remedy, *id.*; or (we add), as in this case,
to provide a particular form of hearing. So *Houston* is not
undermined by *Rockwell*, but neither does it dictate
affirmance of the district court in this case. Far from it. The
basis of federal jurisdiction remains, as we have ruled,
section 1441(d), and nothing else. And that section
forbids a jury trial. Unless the prohibition is jurisdic-
tional, it can as in *Houston* be waived or forfeited by the
defendant, for whose benefit it exists. But it was not
waived or forfeited merely by Alitalia's agreeing not to
object to a jury demand on grounds of untimeliness. Its
objection was and is not to the delay in making the de-
mand, but to the demand itself.

Our conclusion that the demand should not have been
granted because of Alitalia's change of status follows
not only from the statutory wording but also from con-
siderations of judicial economy and of the underlying
purpose of the Foreign Sovereign Immunities Act. The
reason that Rule 38(b) of the civil rules sets a tight dead-
line for demanding a jury trial is that preparation for a
trial often depends critically on whether it will be a jury
trial or a bench trial. Lay jurors have different levels of
comprehension from professional judges and bring dif-
ferent cognitive and psychological biases to the task of
determining which witnesses to believe and which infer-
ences to draw from the evidence as a whole. Jury con-
sultants, mock juries, and submission of questions for
jury voir dire are illustrations of the preparations that
lawyers make for jury trials but not for bench trials.
Knowing which kind of trial it will be may also facilitate

settlement by dispelling a material uncertainty, since some claims are known to be more appealing to juries than to judges, and vice versa.

Moreover, allowing indefinite postponement of the decision whether the trial shall be to a jury or to the judge would invite strategic maneuvering. What has been privatized can be renationalized. Suppose that confronted with an unexpected demand for a jury trial a privatized defendant owned 49 percent by the government asks the government to repurchase 2 percent of the shares from the private stockholders; conversely, suppose that a defendant 51 percent owned by its government decides when it is sued that it would prefer a jury trial and so it asks its government to sell 2 percent of the shares from the government's holding, which the government could then repurchase after the suit was over.

On all these counts it is vital, especially in a suit brought under the Foreign Sovereign Immunities Act, that the parties know as soon as possible after a case is filed whether if there is a trial it will be to the judge or to a jury. That would be a compelling reason why, even if the district court had been correct that the Act had fallen out as the jurisdictional basis of the suit and been replaced by 28 U.S.C. § 1332(a)(2), we would not countenance the tolling of the 10-day deadline in Rule 38(b) because of Alitalia's change of status. Rule 39(b) allows the district court to grant an untimely demand for a jury, but only, the courts have held, if a good reason for the belated demand is shown. *Pacific Fisheries Corp. v. HIH Casualty & General Ins., Ltd.*, 239 F.3d 1000, 1002 (9th Cir. 2001); *SEC v. Infinity Group Co.*, 212 F.3d 180, 195-96 (3d Cir. 2000). Alitalia's change of status might seem to be a good reason, cf. *Marseilles Hydro Power, LLC v. Marseilles Land & Water*

*Co.*, 299 F.3d 643, 649-50 (7th Cir. 2002), but it is not, quite apart from the practical concerns of preparation and predictability that we have emphasized so far. The purpose of foreign sovereign immunity—"to give foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns," *Dole Food Co. v. Patrickson*, *supra*, 538 U.S. at 479—does not fall out of the picture when a foreign-state entity is privatized. If the result of the jury trial in this case is allowed to stand, foreign governments may think twice before privatizing one of its instrumentalities that has been sued in a U.S. court. The timing of foreign governments' decisions on whether and when to privatize their instrumentalities would be affected, creating a complication in these governments' decision-making process that could be an irritant in their relations with the United States. Although the plaintiffs brandish the Seventh Amendment at us, we are confident that neither the 10-day deadline in Rule 38(b), nor our refusal to countenance its being tolled in this case, violates the amendment.

So Alitalia, we conclude at long last, was entitled to a nonjury trial. And since the facts found on remand may differ from those found by the jury in the trial that our decision sets at naught, we shall not comment on the merits of either the appeal or the cross-appeal (in which the plaintiffs seek relief beyond what they got in the district court)—except with regard to Alitalia's statute of frauds defense. That issue was decided by the magistrate judge, is fully briefed here, and will govern the scope of the breach and damages issues on remand; it would be a waste of judicial resources to defer decision on it.

The question is whether the 2000 agreement between the plaintiffs and Alitalia identifies the parties' obligations

with sufficient certainty to be enforceable. On the answer depends whether the liability and damages issues are limited to the period covered by the parties' 2001 supplementary agreement (which Alitalia concedes satisfies the statute of frauds) or encompass the entire 2001-2005 contract period, as the magistrate judge ruled. We conclude that the 2000 agreement did not specify the parties' obligations with sufficient certainty to comply with the requirements of the statute of frauds. The agreement specified neither price nor quantity nor a formula for computing them. Price was to be based on "market needs" and quantity on "mutually determined goals." Price and quantity were, of course, essential terms. Without them, there was no enforceable contract. The magistrate judge's error was to allow oral evidence to be used to fill the missing gaps, which destroys the purpose of requiring that the essential terms of a contract governed by the statute of frauds be in writing to be enforceable. *Bartsch v. Gordon N. Plumb, Inc.*, 485 N.E.2d 1105, 1111 (Ill. App. 1985); *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1180-81 (7th Cir. 1991) (Illinois law). The remand shall therefore be limited to the 2001 time period.

The other issues we remit to the nonjury trial. But to provide further guidance on remand, we address an ambiguity in the meaning of the term "nonjury trial." Does it mean that the trial must be conducted in the absence of a jury, or merely that the "verdict" must be rendered by the judge rather than by a jury? We think it is latter. In many trials some factual issues are to be resolved by a jury and others by a judge, e.g., *Brine v. University of Iowa*, 90 F.3d 271 (8th Cir. 1996); *Nelson v. J.C. Penney Co.*, 75 F.3d 343 (8th Cir. 1996); *Young v. Miller*, 883 F.2d 1276 (6th Cir. 1989); *Ogonowski v. State*, 589 A.2d 513 (Md. App.

1991); *People v. Willis*, 577 N.E.2d 1215 (Ill. App. 1991), and in these mixed bench/jury trials all the evidence is introduced in the presence of both triers of fact and the jury resolves the issues triable by the jury and the judge the other issues, except that if there are factual issues common to both the jury- and the judge-tried claims the jury's verdict binds the judge. *McKnight v. General Motors Corp.*, 908 F.2d 104 (7th Cir. 1990).

Consistent with the practice in mixed trials, on remand the magistrate judge should first decide whether the development of the facts at the first trial was sufficient to enable him to make his own findings of fact and conclusions of law on both liability and damages. If so, he need not conduct a further evidentiary hearing; it would be redundant. *Fisher v. Danos*, *supra*, 671 F.2d at 906. But he may instead realize that he's forgotten some of the evidence (the trial took place more than a year ago), or that since he was not the trier of fact he did not pay as close attention to it as he would have done in a bench trial, or that in a bench trial he would have elicited additional evidence (judges are reluctant to question witnesses in jury trials for fear of confusing jurors about who is the trier of fact, but there is no similar inhibition in a bench trial). On any of these assumptions he should conduct a further evidentiary hearing. Of course if he takes the first course and decides the case without taking additional evidence he must give no weight to the jury's verdict, for there should not have been such a verdict.

REVERSED AND REMANDED.

A true Copy:

      Teste:

                            _____

                            *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*