In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3012

PATRIOT HOMES, INC. and PATRIOT
MANUFACTURING, INC.,

*Plaintiffs-Appellees,*

*v.*

FOREST RIVER HOUSING, INC., doing
business as STERLING HOMES,

*Defendants-Appellants.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 05 C 471—**Allen Sharp,** *Judge.*

———————

ARGUED MARCH 29, 2007—DECIDED JANUARY 10, 2008

———————

Before BAUER,[1] FLAUM, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Two companies, Patriot Homes
and Forest River Housing, compete in the modular hous-

———————

[1] Circuit Judge Ann Claire Williams was a member of the panel
when this case was orally argued on March 29, 2007. Subse-
quently, Judge Williams deemed it appropriate to recuse her-
self from further participation in the case and Circuit Judge
William J. Bauer was designated to join the panel as her
replacement. Judge Bauer has read the briefs and listened to
a recording of the oral arguments. He has, in all respects,
fully participated in the case since joining the panel.

ing manufacturing industry. Patriot sued Forest River Housing's subsidiary, Sterling Homes, and four former Patriot employees (now Sterling employees) for copying their home designs. Sterling appeals the district court's preliminary injunction order which enjoined it from misappropriating Patriot's copyrights, confidential information, trade secrets, and computer files.

The parties have had, for several years, a rather contentious relationship. In 2004, Forest River tried to purchase Patriot. When Patriot declined Forest River's overtures, Forest River did an end run and hired away four of Patriot's employees (they are named as individual defendants in this case) and then formed a new company, Sterling, to build modular homes. Before leaving Patriot, the four employees copied information from the company's computers and brought the materials with them when they joined Sterling. Patriot's former general manager assumed the role of general manager of Sterling. Sterling allegedly used the information taken from Patriot's computers to build and sell homes. In the spring of 2005, Sterling distributed brochures containing exact copies of Patriot's floor plans. Sterling's homes, however, were less expensive. Patriot filed suit, alleging copyright infringement under 17 U.S.C. §§ 101 *et seq.* and violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. Patriot sought preliminary and permanent injunctive relief against Sterling to prevent the disclosure or use of its information and trade secrets, an order requiring Sterling to return all of Patriot's confidential information and trade secrets that are allegedly under Sterling's control, compensatory damages, punitive damages, and pre- and post-judgment interest.

Sterling does not deny that Patriot's former employees took information from Patriot's computers before they jumped ship, nor does it deny that it has used the information. Sterling contends, however, that all of Patriot's

alleged trade secret and/or confidential information is readily ascertainable and in the public domain. As a result, Sterling maintains that its use of the information was not improper. To understand this contention, a brief look at the modular home business is helpful.

Modular home manufacturers must obtain approval from the states where they hope to sell their homes. To obtain state approval, each company must submit to the state the systems manuals, quality assurance manuals, model drawings, and substantiating engineering calculations for the homes that the manufacturer plans to sell in that state. Patriot primarily sells its homes in Big Ten territory: Indiana, Ohio, Michigan, and Illinois. It has submitted the required information to each state.

After the preliminary injunction hearing, Sterling sent Freedom of Information Act (FOIA) requests to Indiana, Michigan, and Illinois requesting copies of the documents that Patriot submitted for state approval. In response to the requests, Indiana produced thousands of documents, including Patriot's systems manuals, quality assurance manual, and individual modular submissions. None of these documents were marked confidential. Michigan and Illinois produced similar documents in response to Sterling's requests, including various systems manuals. Patriot wrote to each state demanding that it take immediate remedial action to preserve the confidential nature of these documents; however, none of the states complied or indicated that the documents were improperly produced. Although none of the documents were marked confidential, Patriot contends that the information it submitted to each state is proprietary and confidential. Sterling asserts that the only alleged trade secret/confidential information not contained in materials obtained from the FOIA requests are: (1) bills of material; (2) prewrites; (3) pricing information contained in the prewrites; (4) order forms; and (5) informa-

tion regarding which models are the best sellers. Otherwise, everything that Patriot contends is confidential and trademarked was produced in response to the FOIA requests.

In June of 2006, the district court entered a preliminary injunction against Sterling enjoining it from:

> [u]sing, copying, disclosing, converting, appropriating, retaining, selling, transferring, or otherwise exploiting Patriot's copyrights, confidential information, trade secrets, or computer files.

The preliminary injunction also required Sterling to:

> [c]ertify that copied data and materials of Patriot's property, confidential information and trade secrets on computer files and removable media (CDs, DVDs, tapes, etc.) have been deleted or rendered unusable.

Sterling does not quibble with the injunction's prohibition on using the computer files obtained from Patriot's computers; it asserts, however, that the remainder of the injunction is so vague as to constitute only a general prohibition not to break the law, leaving it without guidance as to when its actions might violate the injunction.

We review the district court's decision to grant a preliminary injunction for abuse of discretion. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003). Rule 65(d) of the Federal Rules of Civil Procedure requires that the injunction set "forth the reasons for its issuance; . . . be specific in terms; . . . [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." *See also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 646 (7th Cir. 2002) (stating that any injunction issued by a federal district court must be detailed and specific to ensure proper enforcement through contempt proceedings or otherwise); *PMC,*

*Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (finding that an injunction must "be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt"). This requirement of specificity spares courts and litigants from struggling over an injunction's scope and meaning by informing those who are enjoined of "the specific conduct regulated by the injunction and subject to contempt." *Marseilles Hydro Power*, 299 F.3d at 647 (citing *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996)); *Hispanics United of DuPage County v. Village of Addison*, 248 F.3d 617, 620 (7th Cir. 2001).

The preliminary injunction entered by the district court uses a collection of verbs to prohibit Sterling from engaging in certain conduct, but ultimately it fails to detail what the conduct is, *i.e.*, the substance of the "trade secret" or "confidential information" to which the verbs refer. While the law prohibits using another's trade secrets, *American Can Co. v. Mansukhani*, 742 F.2d 314, 328 (7th Cir. 1984), it is not clear from the injunction order what the trade secret or confidential information is in this case. Patriot claims that its trade secret is the "playbook" for constructing modular homes consisting of its blueprints, engineering calculations, quality control manuals, and other documents. But it does not deny that much of this information was readily available when Sterling submitted FOIA requests because at that time Patriot had not asked the states to keep the information confidential.

In *American Can*, a case involving a similar issue, the plaintiff accused the defendant, a former employee, of misappropriating its trade secrets for a certain type of commercial jet ink. We found that the district court

erred in issuing a preliminary injunction enjoining the defendant from misappropriating the plaintiff's trade secrets without determining whether the defendant's new inks were in fact substantially derived from plaintiff's trade secrets. 742 F.2d at 326 (finding that the district court erred when it failed to consider "the public information about plaintiff's ink formulas, particularly as revealed in patent documents, and [defendant's] own knowledge and experience" in determining the scope of the injunction).

Patriot argues that there is no requirement that a court identify each and every element of copyright originality or trade secret and that the injunction identified specific proscribed acts. We disagree. The district court did not specify what information is a trade secret; the parties also dispute what information is protected. Sterling cannot tell, and neither can we, whether using the information it obtained through the FOIA requests would violate the injunction. While it is not always easy to ascertain what information is a trade secret or confidential at this stage of the proceedings, the district court still must make this determination in order to clearly delineate Sterling's responsibilities pursuant to the injunction. *Id.* at 332 ("The problem of framing an appropriate order may be particularly acute in trade secret cases, but trade secret injunctions that are too vague must be set aside.") (Internal citations omitted.) In fact, Patriot stated during oral argument that the only way Sterling might know that it violated the injunction order is to look at the transcript from the preliminary injunction hearing. This requires a lot of guesswork on Sterling's part in order to determine if it is engaging in activities that violate the injunction, since the order itself is a little more than a recitation of the law. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 543 (7th Cir. 1998) (finding that a provision of an injunction

that enjoins the defendant from inducing the plaintiffs' sales agents and former sales agents to engage in "unlawful insurance practices" but failing to specify the practices does not comply with Rule 65(d)); *City of Mishawaka v. Am. Elec. Power*, 616 F.2d 976, 990 n.18 (7th Cir. 1980) (vacating an injunction enjoining defendants "from monopolizing or attempting to monopolize the distribution and sale of electric power" because the injunction was too vague to identify the activities enjoined); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1113 (8th Cir. 1969) (finding that a preliminary injunction stating that "[a]ll defendants separately and jointly are restrained from using or disclosing trade secrets and confidential technical information of plaintiff to any person, firm or corporation" is impermissibly vague). *Cf. Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 684 (7th Cir. 1983) (upholding a preliminary injunction where the district court's order placed defendants on notice of the restrained acts and provided a procedure for interpreting and applying the injunction and distinguishing between plaintiff's trade secrets and information in the public domain).

For these reasons, we VACATE the preliminary injunction because it lacks specificity as required by Rule 65(d).[2] Accordingly, we REMAND for proceedings consistent with this opinion. The Defendants-Appellants are awarded their costs.

---

[2] Separately, Sterling filed a motion to dismiss Patriot's CFAA claim, which the district court denied; however, we need not resolve this issue because the district court's decision was interlocutory and not immediately appealable unless Sterling received certification to appeal, which it did not.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*