In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-3176

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD R. BENNETT, also known as Butch,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 CR 380—**James B. Zagel**, *Judge.*

ARGUED APRIL 10, 2003—DECIDED JUNE 23, 2003

Before BAUER, RIPPLE, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* A grand jury returned a five-count indictment charging Defendants Donald R. Bennett and Edward Landaw with wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 371. Both men appeared separately before the district court and entered guilty pleas on one count of conspiracy to commit wire fraud pursuant to plea agreements. After learning that the government had conditioned a two-level reduction in Landaw's offense level upon Bennett pleading guilty first, Bennett moved to withdraw his guilty plea. The district court conducted a two-day evidentiary hearing on the matter and denied Bennett's

motion. The court then sentenced him to forty months' imprisonment, and this appeal ensued. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Already serving a lengthy prison sentence for bank robbery, for which he was not due to be released until 2032, Bennett, who is now sixty years old, orchestrated a scheme whereby he and other inmates would make telephone calls without paying for them. To facilitate this criminal endeavor, Bennett and Landaw established over thirty-five telephone service accounts in several states using various names without the permission of those people. Bennett and Landaw, along with others at their direction, then placed numerous calls and had those calls billed to the persons whose names were on the accounts. The pair also enlisted the help of people outside the jail by promising them unlimited talking time with their incarcerated boyfriends.

As we said earlier, the two pleaded guilty in separate appearances. During Bennett's plea colloquy, the district court established Bennett's competence to plead guilty, reviewed the plea agreement with him (including his trial rights and the consequences of pleading guilty), and asked whether Bennett was satisfied by the representation he had received from his attorney, Victor Pilolla. Of particular import were the questions concerning the voluntariness of his plea and his understanding of the terms of the agreement. The court specifically asked Bennett whether he had fully read and discussed the plea agreement with Pilolla and whether anyone had forced, threatened, or made any promises to Bennett to induce a guilty plea. Bennett replied that he had fully read and discussed the agreement with Pilolla and that his plea was entirely voluntary.

The district court accepted Bennett's guilty plea and later entertained Landaw's guilty plea. It was not until Landaw's plea colloquy, however, that the district court learned that the government conditioned a two-level reduction in Landaw's offense level upon Bennett pleading guilty first. The district court stated that, had it known of the condition in Landaw's plea agreement when it accepted Bennett's plea, it would have inquired further into the basis for Bennett's plea to ensure its voluntariness. The court, however, accepted Landaw's guilty plea without further questioning Bennett.

Two months after pleading guilty, Bennett filed a *pro se* motion to withdraw his plea, arguing that Landaw and Landaw's attorneys coerced him to plead guilty and that he was actually innocent of the charge. Bennett claimed that the "package deal" in Landaw's plea agreement, which enabled Landaw to avoid a sentence increase for an escape charge in the Northern District of Indiana, highly motivated Landaw to pressure Bennett into pleading guilty. Bennett further argued that the government's failure to disclose this term of Landaw's plea agreement to the district court during Bennett's plea colloquy was a violation of Federal Rule of Criminal Procedure 11, insofar as the district court failed to probe adequately the voluntariness of his plea. Finally, Bennett asserted that the terms of the package deal had not been disclosed to Pilolla, which deprived Bennett of the effective assistance of counsel because Pilolla was not aware of the potential for coercion.

Bennett did not provide details of Landaw's coercion in the motion but requested, and was granted, a hearing. The district court scheduled a hearing on November 2, 2000, and appointed stand-by counsel for Bennett. Bennett became ill on November 2, so the hearing was continued until March 15, 2001. During the hearing, Bennett exam-

ined Landaw's attorneys (Sarah Ellis and Daniel Hesler), Landaw, Pilolla, and the prosecutor involved with the case.

Bennett first called Sarah Ellis to the stand. She testified about her discussions with Landaw concerning his plea agreement and the package deal requiring Bennett to plead guilty first. She testified that Landaw said he would speak with Bennett about pleading guilty but that he never told her he was pressuring Bennett to do so. Ellis also testified that she met with Bennett twice, both times with Pilolla's knowledge. During the first meeting, according to Ellis, she explained to Bennett that Landaw's plea agreement was contingent upon Bennett taking responsibility for the scheme. Ellis testified that Bennett claimed full responsibility for the scheme and that he stated that Landaw's involvement was limited. Ellis recalled that during her second meeting with Bennett he expressed interest in pleading guilty. She testified that she was not aware of any attempts to threaten or coerce him.

Bennett then called Daniel Hesler, who testified that Bennett stated he felt some moral compunction to go along with the deal. Hesler also testified about meeting with Bennett to discuss whether Bennett would plead guilty and the package deal in Landaw's agreement. Hesler further testified, by reading a transcript of the voice-mail message, that Pilolla had given permission for Ellis and Hesler to meet with Bennett because Bennett had instructed Pilolla to do so. Finally, Hesler stated that Bennett seemed willing to plead guilty to the charges in order to assist Landaw's sentence, that Bennett never conveyed he had been threatened or coerced in any way, and that Bennett seemed calm at their two meetings.

Bennett's third witness was his attorney, Victor Pilolla, who testified that Bennett had earlier rejected deals similar to the one he ultimately accepted. Pilolla testified

that he did not see a final version of the plea agreement until the morning of the Rule 11 plea colloquy but that he did fully discuss the final version with Bennett that morning. Pilolla further testified that plea negotiations took place prior to January 5, 2000, but he stated that he was unaware of the condition in Landaw's agreement that Bennett plead guilty first. He also testified that he had no reason to doubt Bennett when Bennett told the district court that he had not been threatened or coerced. Finally, Pilolla testified that Bennett requested to see him two days after pleading guilty in order to discuss withdrawing his guilty plea.

Following Pilolla's testimony, Bennett called Landaw to the stand, and he testified that he had tried to persuade Bennett to plead guilty by whatever way he could, including by putting pressure on Bennett and hollering at him on the morning of the plea colloquy because he (Landaw) was upset. When pressed on cross-examination, however, Landaw admitted that he never physically threatened Bennett and that the only pressure he actually put on Bennett was to persuade him that it was in both men's best interest to plead guilty.

Bennett next called the prosecutor, who testified to the terms of Landaw's plea agreement, specifically the condition requiring Bennett to plead guilty first. Finally, Bennett took the stand and read a statement into the record for his direct examination. He claimed that he had been coerced into signing an affidavit stating that he was responsible for the crimes and that the affidavit had only been signed, at Landaw's attorneys' behest, in connection with a motion to sever his trial from Landaw's. Aside from Bennett, no one else had mentioned this affidavit; yet, it further proves his admission of guilt.

Bennett then testified about the events on the morning of the plea colloquy. He stated that Landaw physically

threatened him to induce him to plead guilty and that he was afraid for his safety. Bennett claimed he was overwhelmed because everyone (Ellis, Hesler, Landaw, Pilolla) kept telling him to plead guilty, that the judge was going to come down hard on him, and that he was unable to exercise his own judgment as a result. He also asked the district court to consider that he suffers from paranoid schizophrenia. Bennett admitted, however, that he told no one that morning, not even the federal marshals or the judge, that he had been threatened. As a consequence, Bennett conceded that, by not disclosing that he was threatened that morning, he had lied to the district court when asked if he had been threatened or coerced in any way.

Following the hearing, Bennett filed a *pro se* memorandum simply rehashing his argument that Pilolla never knew about Bennett's meetings with Ellis and Hesler and that, therefore, he had been denied the effective assistance of counsel. Pilolla subsequently filed a statement with the district court disputing Bennett's assertion that he had been unaware of his client's meetings with Landaw's attorneys.

After carefully considering the parties' briefs and the evidence from the two-day hearing, the district court denied Bennett's motion to withdraw his guilty plea. The court did not hold Bennett to the higher burden normally imposed upon defendants seeking to withdraw a plea but still found ample evidence to refute Bennett's claim that his plea had been coerced. The district court concluded that concern for Landaw motivated Bennett's plea and that his motion to withdraw the plea had only been hurried along after prison officials revoked Bennett's unsupervised telephone privileges following his guilty plea. The court declined to address Bennett's claim that he was denied the effective assistance of counsel, finding

that claim more appropriate for a petition under 28 U.S.C. § 2255.

Bennett shortly thereafter filed a second *pro se* motion to withdraw from the plea agreement, reiterating the same basic arguments as the original motion to withdraw the guilty plea. The district court, likewise, rejected this motion on procedural and substantive grounds and thereafter sentenced Bennett to forty months' imprisonment. Bennett then timely filed the instant appeal.

## ANALYSIS

### A. The Denial of Bennett's Motion to Withdraw His Guilty Plea

Bennett's first claim is that the district court erred by denying the motion to withdraw his guilty plea, a decision which we review for an abuse of discretion. *United States v. Merriweather*, 294 F.3d 930, 931 (7th Cir. 2002). Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty after the court accepts the plea, but prior to sentencing, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. Pro. 11(d)(2)(B) (2003).[1] Representations made at a Rule 11 plea colloquy

---

[1] We note that, at the time Bennett sought to withdraw his guilty plea, and when the parties submitted their briefs, the Federal Rules of Criminal Procedure made Rule 32(e) applicable to the withdrawal of guilty pleas. The Federal Rules of Criminal Procedure, however, were amended on April 29, 2002, which took effect on December 1, 2002, after the submission of the parties' briefs in this case. We make mention of this procedural alteration because the reorganization of the Rules has changed the location of substantive provisions applicable to the outcome of this case, and it appears that this is the first case in this Cir-
(continued...)

are given a presumption of verity, *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002), and the defendant bears the burden of demonstrating a fair and just reason to permit withdrawal of the guilty plea, *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir. 2000). After a thorough Rule 11 colloquy, however, the defendant faces an uphill battle; and we review the district court's factual findings as to whether the defendant demonstrated a fair and just reason for clear error. *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001).

Bennett claims that his guilty plea should be withdrawn because it was not voluntarily, knowingly, and intelligently made, and because he is actually innocent. The voluntariness of his plea, however, was examined on two separate occasions by the district court. First, the court explicitly inquired into the voluntariness of Bennett's plea at the original Rule 11 plea colloquy, asking specifically whether Bennett had fully read and understood the charge and the plea agreement. Bennett said that he had. The court asked whether he had fully discussed his trial rights and the possible sentencing range with his attorney. Bennett said that he had. The district court further inquired of Bennett's level of satisfaction with Pilolla's representation, and Bennett replied that he was satisfied. Finally, but not least importantly, the district court specifically asked Bennett whether he had been threatened, coerced, or received any promises inducing him to plead guilty. Bennett replied that his plea was entirely voluntary. Moreover, Bennett did not alert the federal marshals to any possible threats made against him by Landaw that morning.

---

[1] (...continued)
cuit addressing the recent amendments. Rule 11(d) now contains the substantive provisions applicable to the withdrawal of guilty pleas, formerly located in Rule 32(e).

Second, the district court did not end its inquiry with the results of the Rule 11 plea colloquy. Upon learning of the condition in Landaw's plea agreement and after Bennett filed his motion to withdraw, the district court ordered a full evidentiary hearing, which took place over two days (albeit in part because Bennett became ill the first day), and concluded that Bennett's guilty plea had been voluntarily made and properly accepted by the court. The testimony of Ellis, Hesler, Pilolla, and Landaw demonstrated that Bennett was fully aware of the condition in Landaw's agreement, that he accepted responsibility for his guilt and understood all aspects of pleading guilty, and that no one physically threatened or coerced Bennett to induce a guilty plea. We find no error in the district court's determination that the testimony of Ellis, Hesler, Pilolla, and Landaw was more credible than Bennett's.

Bennett also asked the district court to consider that he suffers from paranoid schizophrenia and that this condition prevented him from exercising his own judgment on the morning of the plea colloquy. Bennett claims that he felt too much pressure to plead guilty because everyone around him (Landaw, Ellis, Hesler, Pilolla) was telling him to do so, and that Landaw's actions on the morning of the colloquy made him fear for his safety. The district court rejected this claim, and we see no reason to disagree.

First, the district court noted that Bennett is relatively intelligent and "enjoys the battle he is waging here." Second, Bennett filed several *pro se* motions and briefs and performed most of the examinations during the two-day evidentiary hearing with limited involvement or assistance from his court-appointed, stand-by counsel. Third, the district court established Bennett's mental competency at the Rule 11 plea colloquy, noting that Bennett did not give rote answers to the court's inquiries

that morning. Fourth, Bennett deliberately met with Landaw's attorneys twice outside of the presence of Pilolla prior to pleading guilty. We agree that these events demonstrate Bennett was not suffering from a mental impairment that would have made his guilty plea involuntary.

Finally, Bennett claims that he is actually innocent of the charges but provides only an assertion, supported by testimony from Pilolla, that Bennett had rejected plea deals similar to the one he ultimately accepted. The district court afforded Bennett a full evidentiary hearing, which further demonstrated that Bennett's plea was not coerced and certainly did not provide any evidence of actual innocence. Pilolla's testimony concerning Bennett's prior rejection of similar plea agreements does nothing to establish Bennett's innocence. The district court did not abuse its discretion in denying Bennett's motion to withdraw his plea.

## B. *The Alleged Rule 11 Colloquy Violation*

Bennett also asserts that the district court abused its discretion by denying his motion to withdraw his plea because the court violated Federal Rules of Criminal Procedure 11(b)(2) and 11(c)(2).[2] Under the amended version of Rule 11(b)(2), "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that

---

[2] As with the revisions to Rule 32(e), the applicable portion of Rule 11 has changed since the proceedings in the district court and the submission of the parties' briefs. The substance of the Rules, however, has not been altered; therefore, we cite to the current version of Rule 11. The current version of Rule 11(b)(2) was formerly found at Rule 11(d), and Rule 11(c)(2) was formerly located in Rule 11(e)(2).

the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. Pro. 11(b)(2) Amended Rule 11(c)(2) requires the disclosure of a plea agreement in open court when the plea is offered, unless the court finds good cause to allow *in camera* disclosure. Fed. R. Crim. Pro. 11(c)(2).

Several circuits have held that "package deals," also known as "wired pleas," should be disclosed to the district court because they present unique opportunities for coerced pleas. *See, e.g.*, *United States v. Abbott*, 241 F.3d 29, 33-34 (1st Cir. 2001) ("Package deals pose particular problems with regard to voluntariness . . . ."); *United States v. Holland*, 117 F.3d 589, 594 (D.C. Cir. 1997) ("wiring of a plea is a 'material detail' about which the court should be informed"); *United States v. Carr*, 80 F.3d 413, 416-17 (10th Cir. 1996) (discussing possible inherent coercion in package deals); *United States v. Clements*, 992 F.2d 417, 419 (2d Cir. 1993) ("We agree that the preferred practice is to advise the court explicitly of any condition that has been imposed and accepted by each of the pleading defendants."); *United States v. Caro*, 997 F.2d 657, 659-60 (9th Cir. 1993) ("We make it clear today that, in describing a plea agreement under [Rule 11(b)(2)], the prosecutor must alert the district court to the fact that co-defendants are entering a package deal.").

This Circuit has not yet addressed whether the government is required to disclose package deals. We hold today that the government must advise the district court of any package deals or wired pleas during the Rule 11 plea colloquy of any defendant involved in the deal. The possibility of coercion resulting from plea agreements linking multiple defendants together, or defendants and third persons together, argues for the adoption of this rule. Therefore, the prosecution must comply with this rule or face the penalty of withdrawal of the accepted plea. Upon disclosure of a package deal, the district court

should make a more detailed examination as to the voluntariness of each defendant's guilty plea pursuant to the package deal.

Though we adopt this rule prospectively, we further find that the district court in the case *sub judice* did not violate Rule 11 by not conducting a more thorough examination of the voluntariness of Bennett's plea *at the original plea colloquy*. Bennett conceded that his plea agreement as presented in the district court during his Rule 11 colloquy was entirely complete. Bennett would like us to consider the condition in Landaw's agreement as a part of his own plea agreement because, he argues, the condition resulted in consequences to him. The only consequence to Bennett, however, is that he voluntarily, knowingly, and intelligently decided to plead guilty in order to help Landaw take advantage of the condition. So, Bennett was not coerced as a consequence of this condition such that withdrawal of his plea would be justified. Bennett clearly knew about the condition in Landaw's plea agreement when he chose to plead guilty. That fact, coupled with the absence of coercion, leads us to conclude that Bennett would not have pleaded any differently had the district court further questioned him at the original Rule 11 plea colloquy.

Moreover, the district court's duty to inquire further at the time of Bennett's plea colloquy was more than fulfilled later by the two-day evidentiary hearing. In other words, even though Bennett knew all he needed to know about Landaw's plea agreement when he decided to plead guilty (thereby not reducing his willingness to do so), the district court's decision to conduct an evidentiary hearing eliminated any error that might have occurred at the time of the original Rule 11 colloquy. The district court gave Bennett the opportunity to examine several witnesses in order to attempt to prove that he was coerced, and the court carefully examined all of

the evidence derived from that hearing and the original plea colloquy. As we have concluded, however, the district court properly found that Bennett was not coerced.

Finally, Bennett attempted to raise an ineffective assistance of counsel claim regarding Pilolla's knowledge of the condition in Landaw's plea agreement, but as the district court wisely advised Bennett, such a claim is better preserved for a § 2255 petition.

Accordingly, the decision of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*