# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 05-3750

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRYAN E. SPILMON, *et al.*,

*Defendants-Appellants*.

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:04-CR-70—**Allen Sharp**, *Judge*.

_____

ARGUED APRIL 12, 2006—DECIDED JULY 19, 2006

_____

Before POSNER, RIPPLE, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*.  Bryan Spilmon, a dentist, was indicted for defrauding Medicaid by submitting claims for work that he had not performed, billing for unnecessary procedures, concealing overpayments to him by Medicaid, and committing related offenses. He agreed to plead guilty and receive a 57-month sentence. As part of the plea agreement, the government dismissed charges against his wife. A couple of months after the district judge accepted the guilty plea in a hearing in which Spilmon admitted his guilt, Spilmon moved to withdraw his plea. The judge denied the motion without an evidentiary hearing

and sentenced Spilmon to the 57-month prison term to which he had agreed in the plea agreement (plus three years of supervised release) as well as to pay restitution in excess of $2.4 million. Spilmon appeals from the judgment, arguing that the district judge should have allowed him to withdraw his guilty plea.

His main ground is that the plea was coerced: he says that he believed (in fact knew) all along that he was innocent but that his love for his wife had moved him to admit his guilt so that the charges against her would be dropped. "Package" plea agreements in which dismissal of charges against a spouse or other family member of the principal malefactor is part of the deal are common. They are not improper or forbidden. E.g., *Politte v. United States*, 852 F.2d 924, 929-30 (7th Cir. 1988); *United States v. Marquez*, 909 F.2d 738, 741-43 (2d Cir. 1990); *United States v. Mescual-Cruz*, 387 F.3d 1, 7-8 (1st Cir. 2004); *United States v. Hodge*, 412 F.3d 479, 490-91 (3d Cir. 2005). It would be in no one's interest if a defendant could not negotiate for leniency for another person. From the defendant's standpoint the purpose of pleading guilty is precisely to obtain a more lenient outcome than he could expect if he went to trial. It is a detail whether the leniency he seeks is purely selfish or encompasses additional persons, provided that his plea is not coerced.

A number of cases state that such "package deals" require special scrutiny "because they present unique opportunities for coerced pleas." *United States v. Bennett*, 332 F.3d 1094, 1100 (7th Cir. 2003); see also, e.g., *United States v. Mescual-Cruz*, *supra*, 387 F.3d at 7; *United States v. Abbott*, 241 F.3d 29, 34-37 (1st Cir. 2001); *United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996); *United States v. Caro*, 997 F.2d 657, 659 (10th Cir. 1993). Some cases, such as *Mescual-Cruz*, rightly empha-

size the risk that the defendant may be agreeing to a package deal under threats or other improper pressure from the beneficiary of the deal. Others suggest that "a threat of long imprisonment for a loved one, particularly a spouse, would constitute even greater pressure on a defendant than a direct threat to him." *United States v. Pollard*, 959 F.2d 1011, 1021 (D.C. Cir. 1992). These cases do not, however, suggest an empirical basis for believing that the typical criminal is so altruistic that he is likely to sacrifice himself impulsively for another person. It could be argued that the decision to sacrifice oneself for another is more likely to be carefully, even agonizingly, considered than to be impulsive.

Not all cases endorse a double standard whereby package deals receive stricter scrutiny than other plea agreements. In *Johnson v. Trigg*, 28 F.3d 639, 645 (7th Cir. 1994), for example, we said that "the only arguably improper pressure that the police exerted to get Norman to confess—once the alleged promise to release his mother is set aside as having been acknowledged by Norman himself not to have been an inducement—was to arrest his mother. While her arrest may, despite what the state trial judge appears to have thought, have played a role in Norman's decision to confess, there is no basis in the record to conclude that it prevented him from making a rational decision whether to confess."

This is not to deny that a package deal, like any other plea agreement, could be coercive, in the sense of elicited by improper pressure. Suppose Spilmon were innocent, and knowing this but wanting to convict him anyway the government told him that unless he pleaded guilty it would prosecute his wife—whom it also knew to be innocent. The couple could of course reject the package deal, hoping to be acquitted (being by hypothesis innocent), but given the inherent uncertainties of the trial process they might be

afraid to do so, and the result would be a plea of guilty that resulted in the conviction of an innocent person (the husband). That would be a case of duress, see *Politte v. United States*, *supra*, 852 F.2d at 930—that is, of pressure exerted to obtain a result to which the party applying the pressure had no right, e.g., *Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309, 313-14 (7th Cir. 1992); *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987). And likewise if the government threatened to prosecute the defendant's wife knowing that she was innocent. *United States v. Wright*, 43 F.3d 491, 498-99 (10th Cir. 1994); *Martin v. Kemp*, 760 F.2d 1244, 1248-49 (11th Cir. 1985). But it is not duress to offer someone a benefit you have every right to refuse to confer, in exchange for suitable consideration. That is all that happened here. There is no suggestion that the government believed either Spilmon or his wife to be innocent or that it lacked probable cause to prosecute either of them.

Just the other day, in *United States v. Miller*, 2006 WL 1541426, at *2 (7th Cir. June 7, 2006), citing *Johnson v. Trigg*, *supra*, we explained (citations omitted) that "an objectively unwarranted threat to arrest or hold a suspect's paramour, spouse, or relative without probable cause could be the sort of overbearing conduct that society discourages by excluding the resultant statements. Miller has not given us any reason to doubt that the police accurately stated what they would do if he clammed up, and he does not deny that the Constitution would have allowed them to carry out that plan, for they had probable cause to arrest both Miller and his girlfriend."

Any prosecution of a person that the prosecutor believes to be innocent is coercive; the expected penalty is positive (the chance of conviction may be small, but it is still a chance) and may thus induce a guilty plea. It is a detail whether the prosecutor increases the expected punishment

of an innocent person by piling on the charges against him or by threatening to prosecute another innocent person.

It is a detail but not an unimportant one. The cases that express particular concern about package deals operationalize their concern by requiring that the existence of such a deal be disclosed to the judge so that he can determine its voluntariness. *United States v. Bennett, supra*, 332 F.3d at 1100-01; *United States v. Abbott, supra*, 241 F.3d at 34; *United States v. Holland*, 117 F.3d 589, 594 (D.C. Cir. 1997); cf. *United States v. Clements*, 992 F.2d 417, 419 (2d Cir. 1993). We have no quarrel with the requirement or with the cases that say that such deals must be viewed with caution by the judge; we add only that this is true of all plea deals. The requirement was satisfied in this case. The plea agreement stated that Spilmon's guilty plea was conditional on the dismissal of the indictment against Mrs. Spilmon. The district court confirmed the condition with both the government and Spilmon at the plea hearing—during which, moreover, the judge four times asked Spilmon whether he was pleading guilty voluntarily and each time Spilmon answered in the affirmative without hesitation. He swore that he had not been "improperly threatened or intimidated into pleading guilty."

The failure of Spilmon's duress argument dooms his other argument—that his lawyer in the district court was ineffective in not demanding access to or copies of Spilmon's billing and other records, which the government had seized for use in evidence. Spilmon argues that the records prove his innocence. But with duress as a ground for withdrawing his guilty plea eliminated, we have simply a case in which a defendant seeks to withdraw his guilty plea on the ground that he committed perjury when he told the judge under oath that he had indeed committed the

criminal acts with which the government had charged him. *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002); *United States v. Stewart*, 198 F.3d 984, 986-87 (7th Cir. 1999).

It would not be perjury had he believed when he pleaded guilty that he *was* guilty and only later discovered that, having misunderstood the law or the facts, he had a good defense. *United States v. Gomez-Orozco*, 188 F.3d 422, 426-27 (7th Cir. 1999); *United States v. Groll*, 992 F.2d 755, 759-60 (7th Cir. 1993). But there is no suggestion of that here. He testified under oath at his plea hearing that he was satisfied with his lawyer's representation of him. The records he says his lawyer should have made copies of or looked at more closely were his own records and he must have known at least approximately what they contained. If he thought them exculpatory—if he thought they included records of the very dental procedures that the government contended he had not performed, or described other procedures that the government was wrong to think unnecessary—he would not have testified under oath that he was guilty. A confessed perjurer, he is fortunate that the government has not agreed to his withdrawing his plea so that it can seek a heavier sentence. He has no consistent story of how after pleading guilty he suddenly discovered that his own records proved him innocent.

When he first moved to withdraw his plea, he argued only that though he had known all along that he was innocent, he had decided to fall on his sword to save his wife even though if he was innocent so was she. Later he embroidered his motion to intimate that he might have forgotten what was in the records and that they proved his innocence. He must know whether he's innocent or not, so he would need access to the records only if he thought the evidence against him so overwhelming that unless the records contained

exculpatory evidence he would be certain to be convicted. He was permitted to spend five days reviewing and copying records with the aid of his lawyer, and he was offered three more days to do this and turned that offer down, demanding unlimited access. The court did not abuse its discretion in refusing that demand. It is apparent from the defendant's failure to employ the three additional days to look for exculpatory materials that his request for unlimited access was a stalling tactic.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*