**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2354
_____

ALICIA HATFIELD,

Appellant

v.

AMANDA BERUBE, Caseworker, Mon Valley Regional Office,
Jointly, Severally and Individually;
KATHLEEN TENNANT, Supervisor, Mon Valley Regional Office,
Jointly, Severally and Individually;
ALLEGHENY COUNTY CHILDREN AND YOUTH SERVICES
MON VALLEY REGIONAL OFFICE,
Jointly , Severally and Individually;
MARCIA STURDIVANT, Allegheny County Children, Youth and Families,
Executive Director, Jointly, Severally and Individually;
RICH FITZGERALD, Allegheny County Executive,
Jointly, Severally and Individually
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.:   2:13-cv-00026)
District Judge:  Honorable Nora B. Fischer
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
September 21, 2017

Before:  SHWARTZ, RENDELL and FISHER, Circuit Judges

(Opinion filed: September 29, 2017)

————

OPINION*

————

PER CURIAM

Alicia Hatfield appeals from orders of the District Court granting the defendants' motion to dismiss and motion for summary judgment. For the following reasons, we will affirm.

I.

In March 2012, the Allegheny Court of Common Pleas, Family Division, issued an order for temporary emergency protective custody of Hatfield's four minor children, J.H., B.H., M.M., and A.F. Thereafter, the children became the subject of separate dependency proceedings. Ultimately, M.M. and B.H. were adopted by their maternal grandparents, A.F. was placed with her father, and J.H. was returned to Hatfield's custody.

On January 7, 2013, while the dependency proceedings were pending, Hatfield filed suit in the United States District Court for the Western District of Pennsylvania, complaining about the removal of her children from her custody. Hatfield alleged violations of her Fourth and Fourteenth Amendment rights, raised claims under the Health Insurance Portability and Accountability Act (HIPAA) and the Privacy Act of 1974, and asserted a state law claim for intentional infliction of emotional distress. She named as defendants Allegheny County Executive Rich Fitzgerald; the Mon Valley

————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Regional Office of Allegheny County Children Youth and Family Services (CYF); CYF Executive Director Marcia Sturdivant; and two CYF employees, Supervisor Kathleen Tennant and Caseworker Amanda Berube. The complaint sought injunctive, declaratory, and monetary relief.

The District Court granted the defendants' motions to dismiss and their motion for summary judgment. In particular, the District Court concluded that Fitzgerald and Sturdivant had no personal involvement in the alleged wrongdoing, and that Hatfield's HIPAA and Privacy Act claims were not cognizable. The District Court also held that Hatfield failed to allege facts sufficient to support a claim of municipal liability against CYF. To the extent that Hatfield's claims were based on injuries caused by state court rulings entered against her before she commenced her federal suit, the District Court determined that the claims were barred under the Rooker-Feldman doctrine. With respect to the intentional infliction of emotional distress claim, the District Court concluded that it was barred against CYF by Pennsylvania's Political Subdivision Tort Claims Act, and that Hatfield failed to adduce evidence of extreme or outrageous intentional conduct by Berube and Tennant. In addition, the District Court held that Berube and Tennant were absolutely immune from suit for actions associated with the state court proceedings. Although some of Berube's actions were investigatory, and therefore not subject to absolute immunity, the District Court concluded that Hatfield failed to produce sufficient evidence from which a jury could find that her due process rights were violated. Finally, as to Hatfield's Fourth Amendment claim, the District Court accepted the defendants'

qualified immunity defense because there was no authority clearly establishing the unconstitutionality of Berube's conduct. Hatfield appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016). We may summarily affirm if the appeal presents no substantial question, see 3d Cir. LAR 27.4; I.O.P. 10.6.

## III.

Liability under 42 U.S.C. § 1983 requires personal involvement in the alleged wrongs. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, the District Court identified this problem with Hatfield's complaint and provided her with leave to amend, stating that the claims against Fitzgerald and Sturdivant "could conceivably be cured upon further amendment." Despite this opportunity, Hatfield failed to allege any facts that might establish the personal involvement of Fitzgerald and

4

Sturdivant in the alleged denial of her rights.  Accordingly, the District Court properly granted the motion to dismiss as to these defendants, who were sued only in their individual capacities.

Hatfield attempted to make out a municipal liability claim against CYF for failure to properly train its employees.  See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978).[1]  "A supervising authority may be liable under § 1983 for failing to train [municipal employees] when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the [employees] may come into contact." Gilles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  But to establish liability on a failure-to-train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  Hatfield failed to make this showing.  She alleged only that CYF "fail[ed] to properly train [its] employees [regarding] the Constitutional rights of parents[,]" its "own written policies," HIPAA, and "the Mental Health Procedures Act of 1976."  After the District Court provided her with leave to amend her claims against CYF, she did not allege any specific deficiencies in the training of CYF employees that had a causal nexus with her alleged injuries.  Accordingly, the District Court properly dismissed this claim.

---

[1] Pennsylvania county offices of children and youth services are treated as municipalities for purposes of Monell.  See Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013)

5

We also agree that the Rooker-Feldman doctrine barred Hatfield's attempts to challenge Pennsylvania state court judgments entered before initiation of the present suit. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions. Id. "[T]here are four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining and Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (quoting Exxon Mobil Corp., 544 U.S. at 284). In her complaint, Hatfield primarily alleged that the Pennsylvania state courts lacked sufficient justification for the custody determinations and, as relief, sought the "immediate return of [her] children." To the extent that Hatfield sought direct review of the state courts' conclusions about the sufficient justification, her claims are barred.

To the extent, however, that Hatfield raised claims regarding Berube and Tennant's alleged misconduct that resulted in the state-court judgments, the Rooker-Feldman doctrine does not apply. See B.S. v. Somerset Cty., 704 F.3d 250, 260 (3d Cir. 2013) (holding that Rooker-Feldman doctrine did not preclude subject matter jurisdiction where injury claimed was "traceable to Appellees' actions, as opposed to the state court orders those actions allegedly caused"). Nevertheless, Berube and Tennant are immune from suit for "actions in preparing for and prosecuting … dependency proceedings."

6

Ernst v. Child & Youth Servs. of Chester Cty., 108 F.3d 486, 488, 495 (3d Cir. 1997) (extending to child welfare workers the same principles of immunity that traditionally have been applied to criminal prosecutors). Thus, the District Court correctly dismissed Hatfield's claims challenging Berube's efforts to petition the state court for emergency protective custody, for a shelter hearing, and for an order of dependency. Berube also enjoys immunity for her participation in hearings for the children's permanency plan. See B.S., 704 F.3d at 265 (stating that "absolute immunity for child welfare employees is appropriate when the employee in question 'formulat[es] and present[s] ... recommendations to the court' with respect to a child's custody determination, even if those recommendations are made outside the context of a dependency proceeding" (quoting Ernst, 108 F.3d at 495)). Tennant is likewise absolutely immune because the claims against her related solely to her role in approving the actions that Berube took in the judicial proceedings. Cf. Van de Kamp v. Goldstein, 555 U.S. 335, 346-49 (2009) (holding that supervisory prosecutors are absolutely immune from suits for acts undertaken in relation to an individual trial). But Berube is not absolutely immune for allegedly improper investigative actions taken "outside the context of a judicial proceeding." Ernst, 108 F.3d 497 n.7.

Those investigatory actions, which Hatfield sees as a violation of her Fourth and Fourteenth Amendment rights, include Berube's inspection of Hatfield's home, Berube's inadequate pre-removal investigation, and Berube's failure to provide a copy of a court order to Hatfield. With respect to the Fourth Amendment claim, we agree that Berube is entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). As

7

explained by the District Court, it is far from clear that every reasonable official in Berube's position would have understood that a warrantless inspection of Hatfield's home of the kind that the undisputed facts show occurring here violated her Fourth Amendment rights. See Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (explaining that a clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (internal quotation marks and citation omitted). Hatfield and her live-in boyfriend consented to the inspection when Berube suggested that Hatfield's children possibly could be removed from her custody. But it was not sufficiently clear, either from Supreme Court precedent or a "robust consensus of … persuasive authority" in the Courts of Appeals, see Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (per curiam) (quoting City & Cty. of S.F. v. Sheehan, 135 S. Ct. 1765, 1778 (2015)), that consent under these circumstances was coerced. Cf. United States v. Iglesias, 881 F.2d 1519, 1522-23 (9th Cir. 1989) (holding that homeowner's consent to search was not rendered involuntary when police officer confronted her with separation from her small child). Notably, Berube's reference to the removal of the children was grounded in proper legal authority given that there had been reports of verbal and physical abuse by Hatfield's boyfriend, that prior attempts to contact the family had been unsuccessful or met with hostility, and that another CYF caseworker had previously reported that there was no running water in the kitchen, that all the children were sleeping in one room on soiled beds, and that there was mold on the living room ceiling. See Dupuy v. Samuels, 465 F.3d 757, 762-63 (7th Cir. 2006) (rejecting parents' argument that state agency had

8

coerced their consent by threatening to remove their children where the agency had the valid legal authority to do so).

We also agree that Berube did not violate Hatfield's substantive due process rights. Natural parents have a fundamental liberty interest in the care, custody, and management of their children. See, e.g., Miller v. City of Phila., 174 F.3d 368, 374 (3d Cir. 1999). But this liberty interest must be balanced against the government's compelling interest to protect children, and "does not include a right to remain free from child abuse investigations." Croft v. Westmoreland Cnty. Children & Youth Serv., 103 F.3d 1123, 1125 (3d Cir. 1997) (citation omitted). "[O]nly the most egregious official conduct" violates substantive due process; indeed, the complained of action "must be so ill-conceived or malicious that it 'shocks the conscience.'" Miller, 174 F.3d at 375. Here, the record reveals that Berube petitioned the state court for emergency protective custody of Hatfield's children based on concerns about unsafe living conditions, reports of abuse, and evidence that Hatfield was not cooperating with CYF. In particular, Berube's inspection of the home revealed conditions, described above, similar to those encountered by the previous caseworker. In addition, Berube encountered a strong odor of animal urine, observed broken windows and exposed wires, and noted that a ceiling appeared to be in danger of collapse. With respect to the abuse, Hatfield had reported that her boyfriend had been physical with J.H. and had inflicted bruises on the children. A social services worker informed CYF that Hatfield was driving around Pittsburgh with her children to escape her boyfriend's abuse, but that Hatfield refused to go to a shelter. When Berube contacted Hatfield shortly thereafter, Hatfield was vulgar and refused to

9

share her plan to move out of the house. Later, CYF received another report indicating that Hatfield's boyfriend had been hitting M.M. in the stomach with a book. Hadfield did not challenge this evidence, with the exception of a statement, in her brief in opposition to the defendants' motion for summary judgment, denying that she was driving around Pittsburgh to escape her boyfriend's abuse. Hatfield claimed that she instead was on vacation with her children. But even if Berube's investigation of this incident was not thorough, as Hatfield alleges, we cannot say that Berube acted in a way that shocks the conscience, especially in light of the other undisputed evidence indicating that the children were potentially unsafe.

Hatfield alleged that Berube violated her procedural due process rights by failing to provide her with a copy of a state court order authorizing the removal of her children. To satisfy the Due Process Clause, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust, Co., 339 U.S. 306, 314 (1950). The undisputed facts indicate that when Berbue went to remove the children on March 12, 2012, she showed a copy of the order for temporary emergency protective custody to Hatfield's boyfriend, who had answered the door. When Hatfield returned from the grocery store, Berbue explained to Hatfield that she had presented the court order to Hatfield's boyfriend. On March 14, 2012, Hatfield and her attorney attended a shelter hearing. Under these circumstances, we conclude that Berube did not violate Hatfield's procedural due process rights.

10

In addition, we agree that Hatfield cannot proceed with her claims under the HIPAA and the Privacy Act of 1974 based on CYF employees' alleged disclosure of mental health diagnoses concerning her and her children. As the District Court explained, "HIPAA does not create a private right of action for alleged disclosures of confidential medical information[,]" Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010), and the Privacy Act does not apply to state or municipal agencies or their employees, see Polchowski v. Gorris, 714 F.2d 749, 752 (7th Cir. 1983). Finally, the District Court also properly dismissed Hatfield's intentional infliction of emotional distress claim. Berube is immune for money damages under Pennsylvania's Political Subdivision Tort Claims Act for actions taken within the scope of her duties. See Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006); see also Vargas v. City of Phila., 783 F.3d 962, 975 (3d Cir. 2015) (stating that the "PSTCA provides immunity to municipalities and its employees for official actions unless the employee's conduct goes beyond negligence and constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'" (quoting 42 Pa. Cons. Stat. Ann. § 8550)). Hatfield did not allege any conduct by Berbue that would fall outside the scope of immunity provided for in the PSTCA. See Sanford, 456 F.3d at 315 (stating that "willful misconduct is a demanding level of fault").

V.

For the foregoing reasons, we conclude that there is no substantial question presented by this appeal. Accordingly, we will summarily affirm the District Court's judgment. See Third Cir. LAR 27.4; I.O.P. 10.6.